OSCALENA A. COE *vs.* ARTHUR D. HILL, trustee, & others.

Middlesex.    December 2, 1908.— January 11, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Trust*, Termination. *Devise and Legacy. Husband and Wife. Marriage and Divorce. Words,* "Permanent."

A will provided a trust fund for the benefit of a married daughter of the testator, directing the trustees to pay the net income of the fund "or such portions of the net income and principal sum as they shall in the exercise of sound discretion deem for the best interest of her and her children to my said daughter L., and at the decease of her husband F. or upon her permanent and legal separation from him to pay the whole principal sum and income then remaining to my said daughter L. free from any trust." The testator's daughter and her husband were domiciled in England. They there executed an indenture of separation by which they agreed to live apart, and the husband relinquished all rights in the property of his wife in possession, reversion or otherwise and agreed that

if his wife should die in his lifetime all her property should go to the persons and in the manner to whom and in which it would have gone if the husband had died in her lifetime. Under this agreement the testator's daughter and her husband separated and continued to live apart and had no intention of living together again. The agreement between them was a valid separation deed by the law of England, but there was nothing in the terms of the agreement, the law of England or the relation of the parties under the agreement to prevent them from abrogating the agreement at any time and resuming marital association of their own volition. The testator's daughter brought a bill in equity praying for the termination of the trust on the ground that there had been a "permanent and legal separation" from her husband upon which by the terms of the will the whole principal and income of the fund were to be paid to her free from any trust. *Held*, that the bill must be dismissed, as the separation of the plaintiff and her husband although legal was not permanent, a voluntary separation not being within the terms of the provision for the termination of the trust.

*It seems*, that a provision in a will that the testator's daughter shall have the full enjoyment of a fund theretofore held for her benefit upon procuring a separation or divorce from her husband, if made for the purpose of inducing such procurement without just cause, would be void.

Nature of the contract of marriage and of the status created by it, discussed by BRALEY, J.

BILL IN EQUITY, called a petition, filed in the Probate Court for the county of Middlesex on April 16, 1908, by Oscalena Arville Coe, of Bognor in the county of Sussex in England, wife of Frank Ernest Coe of Hampstead in the county of Middlesex in England, praying for the appointment of a guardian *ad litem* for the four minor children of the plaintiff and her said husband and for the termination of a trust for the benefit of the plaintiff created by the will of Timothy E. Stuart, late of Newton in this Commonwealth, the father of the plaintiff.

In the Probate Court *Lawton*, J., made a decree that the bill be dismissed; and the plaintiff appealed.

On appeal the case was heard by *Rugg*, J., who made a decree that the decree of the Probate Court dismissing the bill be affirmed, and that the case be remanded to the Probate Court for further proceedings. The plaintiff appealed.

The justice filed the following finding of facts:

"This is a bill in equity brought in the Probate Court for the county of Middlesex to terminate a trust established by the will of Timothy E. Stuart, deceased, for the benefit of the plaintiff.

"The material portion of the will of the deceased is as follows: ·

" 'Fifth. All the rest and residue of my estate real, personal or mixed whether now owned or hereafter acquired by me and wherever the same may be situated I give, bequeath and devise as follows, to wit:

" ' To my said son Ronald and his heirs two sevenths of said " rest and residue " free from any trust. To my said daughter Velnah and her heirs two sevenths of said " rest and residue " free from any trust. To my said son Ronald A. Stuart and John A. Emery, my executors and trustees hereinafter named, three sevenths of said " rest and residue."

" ' To have and to hold the same to the said Ronald A. Stuart and John A. Emery, their heirs, executors, administrators and assigns respectively but upon the following uses, trusts and purposes, to wit:

" ' To hold, manage, invest and care for in a prudent and careful manner and to collect all the income therefrom and pay all proper and legal expenses thereon and pay the net income of two thirds of said three sevenths (or two sevenths of said " rest and residue ") to my said wife Sarah for and during her life at such times, quarterly, semi-annually or yearly as my said trustees may find convenient and for her best interest and at her decease to divide the principal sum so held in trust for her equally among my children or their heirs except that the portion that would be paid to my daughter Lena A. Coe shall be held in trust for her and her heirs in the same manner and for the same purposes as that portion of my estate herein specially designated and left to be held in trust for her and her heirs, and to pay the net income of one third of said three sevenths (or one seventh of said rest and residue) or such portions of the net income and principal sum as they shall in the exercise of sound discretion deem for the best interest of her and her children to my said daughter Lena A., and at the decease of her husband Frank E. Coe or upon her permanent and legal separation from him to pay the whole principal sum and income then remaining to my said daughter Lena free from any trust. If the said Lena A. Coe should die before her said husband or before said legal separation from him, I direct my said trustees to hold the sums held in trust for her upon the same trust for her children during their minority and to pay to said children their respective shares

thereof as they respectively become of age ; but if the said Lena dies as aforesaid leaving no issue, I direct that the sum held in trust for her be divided equally among my remaining children and their heirs by right of representation.'

" The plaintiff is the person referred to in the will as 'my daughter Lena A. Coe.'

" The plaintiff and her husband Frank Ernest Coe have been living apart since some time in 1898. The domicil of both husband and wife was then and still is in England. Shortly after the plaintiff and her husband separated and in consequence of the differences between them which led to their separation, they entered into an agreement dated April 21, 1899, which agreement after reciting that unhappy differences had arisen between husband and wife and their consequent determination to live separate from each other and reciting that there were four children of the parties, who are all defendants in these proceedings, provided as follows:

" ' Now this Indenture witnesseth that in pursuance of the said agreement and in consideration of the premises and of the covenants hereinafter contained on the part of the said Frank Ernest Coe and Oscalena Arvilla Coe his wife, the said Frank Ernest Coe hereby covenants with the said Oscalena Arvilla Coe his wife, that the said Oscalena Arvilla Coe shall and may at all times hereafter notwithstanding her coverture live separate and apart from the said Frank Ernest Coe as if she were a *feme sole* and shall henceforth be freed from the control and authority of the said Frank Ernest Coe and shall reside in such place or places and in such manner as she shall think fit and that the said Frank Ernest Coe will not at any time hereafter require her to live with him or institute any legal proceedings or take any other steps whatsoever for that purpose and will not in any wise molest or interfere with the said Oscalena Arvilla Coe in her manner of living or otherwise. And also that all property (if any) now belonging to the said Oscalena Arvilla Coe for any estate or interest whether in possession, reversion or otherwise, shall belong to her for her sole and separate use. And that if the said Oscalena Arvilla Coe shall die in the lifetime of the said Frank Ernest Coe, all property (if any) of the said Oscalena Arvilla Coe which but for this covenant would on

her death go and belong to the said Frank Ernest Coe in his marital right or as her administrator or as tenant by the courtesy shall go to the person or persons and in the manner to whom and which the same would have gone if the said Frank Ernest Coe had died in her lifetime. And this Indenture also witnesseth that in further pursuance of the said agreement and in consideration of the premises the said Oscalena Arvilla Coe hereby covenants with the said Frank Ernest Coe that she the said Oscalena Arvilla Coe will at all times hereafter during the continuance of the said separation keep indemnified the said Frank Ernest Coe from and against all debts and liabilities hereafter to be contracted or incurred by the said Oscalena Arvilla Coe whether for her wearing apparel, maintenance, support or otherwise and from and against all claims and demands for or on account of the same. And further that the said Oscalena Arvilla Coe or any person on her behalf shall not nor will at any time hereafter commence or prosecute any action or other proceeding for compelling the said Frank Ernest Coe to cohabit with her the said Oscalena Arvilla Coe or to allow her any support, maintenance or alimony and shall not nor will molest the said Frank Ernest Coe in any manner. And it is hereby agreed that the said Oscalena Arvilla Coe shall have the custody of all the said children and that the said Frank Ernest Coe shall have access to them under such arrangements as shall from time to time be made between the said Frank Ernest Coe and Oscalena Arvilla Coe for that purpose.

" 'In witness whereof the said parties to these presents have hereunto set their hands and seals the day and year first above written.'

" This agreement was duly signed, sealed, executed and delivered by both parties and acknowledged by the plaintiff before the United States Consul General in London.

" The plaintiff testified that she and her husband had not lived together since they first separated and that she had no intention of living with him again.

" The widow of the testator referred to in the will is still living but has assigned her rights under the will to the children of the testator interested under Article 5, according to their respective interests.

"The agreement between the plaintiff and her husband is a valid separation deed by the law of England. But there is nothing in the terms of the agreement, the law of England or the relation of the plaintiff and her husband under the agreement to prevent them from abrogating the agreement at any time and resuming marital association of their own volition at any time."

*E. H. Warren,* (*A. F. Bigelow* with him,) for the plaintiff.

*J. W. Morton,* (*H. J. Winslow* with him,) for the defendants.

BRALEY, J. By the fifth clause of his will, after having given and devised to his son Ronald and to his daughter Velnah each two undivided sevenths free from any trust, Timothy E. Stuart devised and bequeathed the remaining three sevenths of the rest, and residue of his estate in trust, "to hold, manage, invest and care for in a prudent and careful manner and to collect all the income therefrom and pay all proper and legal expenses thereon and pay the net income of two thirds of said three sevenths (or two sevenths of said 'rest and residue') to my said wife Sarah for and during her life at such times, quarterly, semi-annually or yearly as my said trustees may find convenient and for her best interest and at her decease to divide the principal sum so held in trust for her equally among my children or their heirs except that the portion that would be paid to my daughter Lena A. Coe shall be held in trust for her and her heirs in the same manner and for the same purposes as that portion of my estate herein specially designated and left to be held in trust for her and her heirs, and to pay the net income of one third of said three sevenths (or one seventh of said rest and residue) or such portions of the net income and principal sum as they shall in the exercise of sound discretion deem for the best interest of her and her children to my said daughter Lena A., and at the decease of her husband Frank E. Coe or upon her permanent and legal separation from him to pay the whole principal sum and income then remaining to my said daughter Lena free from any trust. If the said Lena A. Coe should die before her said husband or before said legal separation from him, I direct my said trustees to hold the sum held in trust for her upon the same trust for her children during their minority and to pay to said children their respective shares thereof as they respectively become of age;

but if the said Lena dies as aforesaid leaving no issue, I direct that the sum held in trust for her be divided equally among my remaining children and their heirs by right of representation." By the phrase " my daughter Lena A. Coe " the testator referred to, and meant the petitioner. It is commonly said that marriage is a civil contract, requiring only the free consent of parties capable of contracting, but, if this means that the law no longer regards marriage in its inception as a religious rite, after the relation of husband and wife has been entered upon, each spouse assumes toward the other and toward society in general certain duties and responsibilities, which cease to be mere private regulations and are matters which deeply concern the public welfare. The contract is for life, and cannot be repudiated or terminated at the pleasure of the parties, but can only be dissolved by the State itself. It follows that, after fulfilment of the contract, marriage is a social institution, or status, in which, because the foundations of the family and the domestic relations rest upon it, the Commonwealth has a deep interest to see that its integrity is not put in jeopardy, but maintained. *Smith* v. *Smith,* 13 Gray, 209. *Peck* v. *Peck,* 155 Mass. 479. *Nolin* v. *Pearson,* 191 Mass. 283, 286, 287. *Adams* v. *Palmer,* 51 Maine, 480. *Ditson* v. *Ditson,* 4 R. I. 87. *Livingston* v. *Livingston,* 173 N. Y. 377. *Randall* v. *Kreiger,* 23 Wall. 137. *Maynard* v. *Hill,* 125 U. S. 190. *United States* v. *Grimley,* 137 U. S. 147. *Sottomayor* v. *DeBarros,* 5 P. D. 94. In its conservation the law has steadily refused to sanction the validity of testamentary provisions founded upon conditions precedent to their enjoyment by the legatee, which are intended to bring about the separation of husband and wife. If the testator's purpose was to induce a future separation or divorce of his daughter from her husband, upon the happening of which the fund with accrued income would immediately become payable to her, the condition for this reason would be void. *Cowley* v. *Twombly,* 173 Mass. 393, 397. *Brown* v. *Peck,* 1 Eden, 140. *Wren* v. *Bradley,* 2 DeG. & Sm. 49. *Cartwright* v. *Cartwright,* 3 DeG., M. & G. 982. *H.* v. *W.,* 3 K. & J. 382. *Wilkinson* v. *Wilkinson,* L. R. 12 Eq. 604. *Conrad* v. *Long,* 33 Mich. 78. But, while the testator's intention is the only test, the language he employed is to be construed in the ordinary sense, and for this purpose the

condition, which is made dependent upon either one of two contingencies, is to be treated as a whole. If this is done, then, upon either the death of the husband or upon a divorce between them, whether obtained by her or by him, the fund vests in possession, but it would be a plain perversion of words to say, that the testator meant or intended that, in order to accelerate the enjoyment of the property, the petitioner should procure either her husband's death or a divorce. The testator refers only to a separation, which, under the laws of his domicil, whose provisions he may be presumed to have had in mind, could be grounded by her only on the husband's misconduct. He speaks of its permanency in the sense that the marriage status was to be ended, not by a breach of marital obligations, but by an irrevocable decree for an absolute divorce. It is as if, in making provision for her future welfare, he had said, " If my daughter becomes a widow," or " If because of her husband's marital misconduct she lawfully obtains an absolute divorce, then the trust as to her is to be terminated, and she is to have her share of the property." The voluntary exercise by a legatee of a right which the law confers is not against public policy, and does not avoid a testamentary gift, the language of which may show the testator had in mind that such a contingency might arise. *Cowley* v. *Twombly*, 173 Mass. 393. *Thayer* v. *Spear*, 58 Vt. 327. *Born* v. *Horstmann*, 80 Cal. 452, 457, 459. But while the trust is valid, the petitioner asks that it may be terminated upon the ground that she has been permanently separated from her husband. The deed of separation between the spouses was a lawful and binding agreement under the law of their foreign domicil, by which it must be construed and its legal effect ascertained. *Polson* v. *Stewart*, 167 Mass. 211. *Electric Welding Co.* v. *Prince*, 200 Mass. 386. It can there be upheld and enforced, even if no circumstances existed when the deed was executed which would support either a decree for a dissolution of the marriage, or for a judicial separation. *Hart* v. *Hart*, 18 Ch. D. 670. But the existence and effect of foreign laws is a question of fact, and, under the finding of the single justice, neither the terms of the agreement nor the provisions of the domiciliary law as to the marital rights of parties thus separated severed the bonds of matrimony. If they chose, it was within

their power to resume at any time conjugal relations, and upon reconciliation the deed would become a mere nullity. *Bateman* v. *Ross,* 1 Dow. 235. A voluntary separation not being within the terms of the will, the decree of the Probate Court must be affirmed.

<div align="right">

*Decree accordingly.*